# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| GARY ADVOCATES FOR RESPONSIBLE DEVELOPMENT, HOOSIER ENVIRONMENTAL COUNCIL, JUST TRANSITION NORTHWEST INDIANA and SIERRA CLUB,<br><br>*Petitioners*,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, Administrator, U.S. Environmental Protection Agency, | Case No. 25-1128 |

## PETITION FOR REVIEW

Pursuant to Clean Air Act § 307(b)(1), 42 U.S.C. § 7607(b)(1), Rule 15 of the Federal Rules of Appellate Procedure, and D.C. Circuit Rule 15, Gary Advocates for Responsible Development, Hoosier Environmental Council, Just Transition Northwest Indiana, and Sierra Club hereby petition this Court for review of the final action taken by Respondents U.S. Environmental Protection Agency and Administrator Lee Zeldin in the Federal Register notice published at 90 Fed. Reg. 14,207 (Mar. 31, 2025), entitled "Partial Administrative Stay of National Emission Standards for Hazardous Pollutants: Integrated Iron and Steel Manufacturing Facilities Technology Review" (Attachment 1).

1

Dated: May 16, 2025

Respectfully submitted,

*/s/ Adrienne Y. Lee*
Adrienne Y. Lee
James S. Pew
Earthjustice
1001 G Street, NW, Suite 1000
Washington, D.C. 20001
(202) 667-4500
alee@earthjustice.org
jpew@earthjustice.org

*Counsel for Gary Advocates for Responsible Development, Hoosier Environmental Council, Just Transition Northwest Indiana, and Sierra Club*

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| GARY ADVOCATES FOR RESPONSIBLE DEVELOPMENT, HOOSIER ENVIRONMENTAL COUNCIL, JUST TRANSITION NORTHWEST INDIANA and SIERRA CLUB,<br><br>*Petitioners*,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, Administrator, U.S. Environmental Protection Agency, | Case No. 25-1128 |

## RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Gary Advocates for Responsible Development, Hoosier Environmental Council, Just Transition Northwest Indiana, and Sierra Club make the following disclosures:

### Gary Advocates for Responsible Development

<u>Non-Governmental Corporate Party to this Action</u>: Gary Advocates for Responsible Development ("GARD").

<u>Parent Corporations</u>: None.

<u>Publicly Held Company that Owns 10% or More of Party's Stock</u>: None.

3

Party's General Nature and Purpose: GARD is a nonprofit corporation organized and existing under the laws of the State of Indiana. GARD is dedicated to promoting economic development in the City of Gary that prioritizes environmental sustainability.

## Hoosier Environmental Council

Non-Governmental Corporate Party to this Action: Hoosier Environmental Council ("HEC").

Parent Corporations: None.

Publicly Held Company that Owns 10% or More of Party's Stock: None.

Party's General Nature and Purpose: HEC is a nonprofit corporation organized and existing under the laws of the State of Indiana. HEC is Indiana's largest environmental public policy organization, working to improve people's health, the economy, and the environment for forty years, through education, technical assistance, and advocacy.

## Just Transition Northwest Indiana

Non-Governmental Corporate Party to this Action: Just Transition Northwest Indiana ("JTNWI").

Parent Corporations: None.

Publicly Held Company that Owns 10% or More of Party's Stock: None.

Party's General Nature and Purpose: JTNWI is a nonprofit corporation organized and existing under the laws of the State of Indiana. JTNWI educates and organizes Northwest Indiana communities and workers to support a just transition to a regenerative economy that protects the environment, climate, and future generations.

**Sierra Club**

Non-Governmental Corporate Party to this Action: Sierra Club.

Parent Corporations: None.

Publicly Held Company that Owns 10% or More of Party's Stock: None.

Party's General Nature and Purpose: Sierra Club is a nonprofit corporation organized and existing under the laws of the State of California, dedicated to the protection and enjoyment of the environment.

Dated: May 16, 2025

Respectfully submitted,

*/s/ Adrienne Y. Lee*
Adrienne Y. Lee
James S. Pew
Earthjustice
1001 G Street, NW, Suite 1000
Washington, D.C. 20001
(202) 667-4500
alee@earthjustice.org
jpew@earthjustice.org

*Counsel for Gary Advocates for Responsible Development, Hoosier Environmental Council, Just Transition Northwest Indiana, and Sierra Club*

# CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing **Petition for Review** and **Rule 26.1 Disclosure Statement** on Respondents by sending a copy via First-Class Mail to each of the following addresses on this 16th day of May.

>Lee M. Zeldin
>EPA Headquarters 1101A
>United States Environmental Protection Agency
>1200 Pennsylvania Avenue, N.W.
>Washington, D.C. 20460
>
>Pamela J. Bondi
>Attorney General
>U.S. Department of Justice
>950 Pennsylvania Avenue, N.W. Washington, D.C. 20530
>
>Correspondence Control Unit Office of
>General Counsel (2311)
>United States Environmental Protection Agency
>1200 Pennsylvania Avenue, N.W.
>Washington, D.C. 20460

>>*/s/ Adrienne Y. Lee*
>>Adrienne Y. Lee

# ATTACHMENT 1

**Final Regulations**

For the reasons set forth in the preamble, the Copyright Office amends 37 CFR part 201 as follows:

## PART 201—GENERAL PROVISIONS

■ 1. The authority citation for part 201 continues to read as follows:

**Authority:** 17 U.S.C. 702.

■ 2. Amend § 201.11 by revising paragraphs (f)(1) and (h)(3)(iv) to read as follows:

### § 201.11 Satellite carrier statements of account covering statutory licenses for secondary transmissions.

* * * * *

(f) * * *

(1) All royalty fees shall be paid by electronic funds transfer using *Pay.gov,* and payment must be received in the designated bank by the filing deadline for the relevant accounting period. Satellite carriers must provide specific information as part of the EFT and as part of the remittance advice, as listed in the instructions for *Pay.gov,* the Statement of Account form, and the Office's website.

* * * * *

(h) * * *

(3) * * *

(iv)(A) All requests filed under this paragraph (h) must be accompanied by a filing fee in the amount prescribed in § 201.3(e) for each Statement of Account involved. Payment of this fee must be by EFT using *Pay.gov.* No request will be processed until the appropriate filing fees are received.

(B) All requests that a supplemental royalty fee payment be received for deposit under this paragraph (h) must be accompanied by a remittance in the full amount of such fee. Payment of the supplemental royalty fee must be by EFT using *Pay.gov.* No such request will be processed until an acceptable remittance in the full amount of the supplemental royalty fee has been received.

* * * * *

■ 3. Amend § 201.17 by revising paragraphs (k)(1) and (l)(4)(iv) to read as follows:

### § 201.17 Statements of Account covering compulsory licenses for secondary transmissions by cable systems.

* * * * *

(k) * * *

(1) All royalty fees must be paid by electronic funds transfer (EFT) using *Pay.gov,* and must be received in the designated bank by the filing deadline for the relevant accounting period. Cable systems must provide specific information as part of the EFT and as part of the remittance advice, as listed in the instructions for *Pay.gov,* the Statement of Account form and on the Office's website.

* * * * *

(l) * * *

(4) * * *

(iv)(A) All requests filed under this paragraph (l) must be accompanied by a filing fee in the amount prescribed in § 201.3(e) for each Statement of Account involved. Payment of this fee must be made by an electronic payment using *Pay.gov.* No request will be processed until the appropriate filing fees are received; and

(B) All requests that a supplemental royalty fee payment be received for deposit under this paragraph (l) must be accompanied by a remittance in the full amount of such fee. Payment of the supplemental royalty fee must be by an electronic payment using *Pay.gov.* No such request will be processed until an acceptable remittance in the full amount of the supplemental royalty fee has been received.

* * * * *

■ 4. Amend § 201.28 by revising paragraphs (h)(1) and (j)(3)(v) to read as follows:

### § 201.28 Statements of Account for digital audio recording devices or media.

* * * * *

(h) * * *

(1) All royalty fees must be paid by electronic funds transfer (EFT) using *Pay.gov,* and must be received in the designated bank by the filing deadline for the relevant accounting period. Remitters must provide specific information as part of the EFT and as part of the remittance advice, as listed in the instructions for *Pay.gov,* the Statement of Account form, and the Office's website.

* * * * *

(j)) * * *

(3) * * *

(v)(A) The request must be accompanied by a filing fee in the amount prescribed in § 201.3(e) for each Statement of Account involved. Payment of this fee must be by EFT using *Pay.gov.* No request will be processed until the appropriate filing fees are received.

(B) Requests that a supplemental royalty fee payment be deposited must be accompanied by a remittance in the full amount of such fee. Payment of the supplemental royalty fee must be by electronic payment using *Pay.gov.* No such request will be processed until an acceptable remittance in the full amount of the supplemental royalty fee has been received.

* * * * *

**Shira Perlmutter,**

*Register of Copyrights and Director of the U.S. Copyright Office.*

Approved by:

**Carla D. Hayden,**

*Librarian of Congress.*

[FR Doc. 2025–05444 Filed 3–28–25; 8:45 am]

**BILLING CODE 1410–30–P**

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 63

[EPA–HQ–OAR–2002–0083; FRL–5919.3–02–OAR]

**RIN 2060–AW52**

### Partial Administrative Stay of National Emission Standards for Hazardous Air Pollutants: Integrated Iron and Steel Manufacturing Facilities Technology Review

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule; partial stay.

**SUMMARY:** By a letter dated August 14, 2024, and supplemented by a letter dated March 5, 2025, the EPA's Office of Air and Radiation announced the convening of a proceeding for reconsideration of certain requirements in the final rule, ''National Emission Standards for Hazardous Air Pollutants: Integrated Iron and Steel Manufacturing Facilities Technology Review,'' published on April 3, 2024. In this action, the EPA is staying provisions establishing compliance deadlines in 2025 for requirements that were added or revised by the April 3, 2024, final rule for 90 days pending reconsideration.

**DATES:** Effective March 31, 2025.

**ADDRESSES:** Electronic copies of this document are available on the EPA's website at *https://www.epa.gov/stationary-sources-air-pollution/integrated-iron-and-steel-manufacturing-national-emission.* Copies of this document are also available at *https://www.regulations.gov,* at Docket ID No. EPA–HQ–OAR–2002–0083.

**FOR FURTHER INFORMATION CONTACT:** For questions about this action, contact U.S. EPA, Attn: Katie Boaggio, Mail Drop: D243–02, 109 T.W. Alexander Drive, P.O. Box 12055, RTP, NC 27711; telephone number: (919) 541–2223; and email address: *boaggio.katie@epa.gov.*

**SUPPLEMENTARY INFORMATION:**

## I. Background

On April 3, 2024, the EPA completed a technology review under Clean Air Act (CAA) section 112(d)(6) of the National Emissions Standards for Hazardous Air Pollutants (NESHAP) for Integrated Iron and Steel Manufacturing Facilities that revised standards that were issued in 2003 and reviewed in 2020. Additionally, EPA set standards under CAA sections 112(d)(2) and 112(d)(3) for previously unregulated hazardous air pollutant emissions. The NESHAP amendments are codified at 40 CFR part 63, subpart FFFFF. For further information on the 2024 rule, see 89 FR 23294 (April 3, 2024).

On June 3 and 4, 2024, several interested parties submitted administrative petitions to the EPA seeking reconsideration of various aspects of the 2024 rule pursuant to section 307(d)(7)(B) of the CAA (42 U.S.C. 7607(d)(7)(B)). Copies of these petitions are included in the docket, Docket ID No. EPA–HQ–OAR–2002–0083.

On August 14, 2024, the EPA issued a letter stating our intention to exercise our discretion to reconsider three issues raised in the petitions, address some items of correction, and continue reviewing the petitions for reconsideration. Later, on March 5, 2025, the EPA issued a second letter modifying the scope of the already convened discretionary reconsideration proceeding by identifying some items from the petitions for reconsideration as appropriate for mandatory reconsideration based on the criteria in CAA section 307(d)(7)(B). Copies of both EPA response letters are included in the docket, Docket ID No. EPA–HQ–OAR–2002–0083. Under CAA section 307(d)(7)(B), 42 U.S.C. 7607(d)(7)(B), the Administrator shall convene a proceeding for reconsideration of a rule when the person raising an objection to a rule can demonstrate: (1) that it was either impractical to raise the objection during the period for public comment or that the grounds for the objection arose after the period for public comment; and (2) that the objection is of central relevance to the outcome of the rule.

The March 5, 2025 letter announced that, in addition to the discretionary reconsideration issues identified in the August 14, 2024 letter, the following topics from two petitions will be reconsidered pursuant to CAA section 307(d)(7)(B): (1) work practice standards for unmeasured fugitive and intermittent particulate from unplanned bleeder valve openings; (2) the opacity limit for planned bleeder valve openings; (3) work practice standards for bell leaks; and (4) the opacity limit for slag processing and handling.

In particular, the petitioners identified two errors in the final rule regulatory text related to the work practice standards for unplanned bleeder valve openings (issue 1) and identified ambiguity in the regulatory text for the work practice standards for bell leaks (issue 3). In the August 14, 2024 letter, the EPA initially identified these as items that could be corrected in a short-term corrections document; however, after further evaluation of the issues, the EPA concluded that making the changes necessary to address these items would require public notice and comment because the regulatory text containing the errors and ambiguity was introduced between the proposed rule and final rule and thus was not subject to public notice and comment as required by the CAA. Accordingly, in the March 5, 2025 letter, we found that the petitioners had demonstrated that it was impractical to raise their objections to these provisions during the period for public comment.

We also found that their objections to the errors and ambiguity in the regulatory text for work practice standards for unplanned bleeder valve openings and bell leaks are of central relevance to the outcome of the rule. For bell leaks, we finalized language that was not proposed and directly impacts the ability for industry to comply with the standard. For unplanned bleeder valve openings, we inadvertently defined bleeder valve openings incorrectly that also directly impacts the ability for industry to comply with the standard as written.

Additionally, industry petitioners provided new monitoring data to the EPA in their petitions for reconsideration. This monitoring, which was performed after the close of the comment period, demonstrates that it may be infeasible for some sources to comply with the final rule's opacity limits for planned bleeder valve openings (issue 2) and slag processing and handling (issue 4). This monitoring was performed to substantiate comments about operational variabilities industry had submitted during the public comment period that EPA did not have time to fully evaluate before promulgating the final rule. For this reason, industry was not aware of the need for these data until after the rule was published. Therefore, in support of their petitions for reconsideration, industry provided a more robust dataset than the information submitted pursuant to EPA's 2022 CAA section 114 information collection request during the development of the proposed rule; the new data were not collected as part of the CAA section 114 request and were not available to the EPA until after the rule was finalized. While the EPA concluded there are work practices available to minimize opacity, these new data provide evidence that there is more variability in each source's operations and opacity than we initially accounted for.

Accordingly, in the March 5, 2025 letter, we found that the petitioners had demonstrated that it was impractical to raise these challenges to the feasibility of the proposed opacity standards during the public comment period. If we had received the additional data provided in the petitions during the public comment period, we may have structured the opacity limits in such a way as to account for additional variability. Based on this additional information provided by the petitioners after promulgation of the final rule and after further discussions and analyses, the EPA now understands that, in some cases, the equipment and work practices required by the final rule will not be sufficient or, in some cases, feasible to meet the standards as currently written, making petitioners' objections of central relevance to the outcome of the final rule.

As part of the reconsideration proceeding looking at the issues identified in both the August 2024 and March 2025 EPA response letters, the EPA will prepare a notice of proposed rulemaking that will provide petitioners and the public an opportunity to comment on the issues identified for both discretionary and mandatory reconsideration.

## II. Stay of Certain Provisions

By this action, the EPA is staying the effectiveness of certain aspects of the subpart revised by the final rule entitled, "National Emission Standards for Hazardous Air Pollutants: Integrated Iron and Steel Manufacturing Facilities Technology Review," 89 FR 23294, for 90 days pursuant to its authority under section 307(d)(7)(B) of the CAA. Specifically, the EPA is staying the effectiveness of all provisions with April 3, 2025 compliance dates while the EPA addresses the reconsideration issues in a separate action. Therefore, pursuant to section 307(d)(7)(B) of the CAA, the EPA is staying the effectiveness of these compliance requirements for 90 days. This stay will remain in place until July 1, 2025, at which time those provisions will become effective.

### List of Subjects in 40 CFR Part 63

Environmental protection, Administrative practice and procedure, Air pollution control, Reporting and recordkeeping requirements.

**Lee Zeldin,**

*Administrator.*

For the reasons stated in the preamble, the EPA amends title 40, chapter I, part 63 of the Code of Federal Regulations as follows:

## PART 63—NATIONAL EMISSION STANDARDS FOR HAZARDOUS AIR POLLUTANTS FOR SOURCE CATEGORIES

■ 1. The authority citation for part 63 continues to read as follows:

**Authority:** 42 U.S.C. 7401 *et seq.*

### Subpart FFFFF—National Emission Standards for Hazardous Air Pollutants for Integrated Iron and Steel Manufacturing Facilities

■ 2. Amend § 63.7790 by revising paragraph (a) to read as follows:

### § 63.7790  What emission limitations must I meet?

(a) You must meet each emission limit and opacity limit in table 1 to this subpart that applies to you except that the requirements in table 1 to this subpart for planned bleeder valve openings at new and existing blast furnaces are stayed from April 2, 2025, to July 1, 2025.

* * * * *

### § 63.7793  [Amended]

■ 3. Amend § 63.7793 by staying paragraphs (c), (d), and (f) from April 2, 2025, to July 1, 2025.

### § 63.7800  [Amended]

■ 4. Amend § 63.7800 by staying paragraphs (b)(8) and (9) from April 2, 2025, to July 1, 2025.

### § 63.7821  [Amended]

■ 5. Amend § 63.7821 by staying paragraphs (i), (k), and (l) from April 2, 2025, to July 1, 2025.

### § 63.7823  [Amended]

■ 6. Amend § 63.7823 by staying paragraphs (c)(3), (d)(6), (f), and (h) from April 2, 2025, to July 1, 2025.

### § 63.7833  [Amended]

■ 7. Amend § 63.7833 by staying paragraph (j) from April 2, 2025, to July 1, 2025.

■ 8. Amend § 63.7842 by revising paragraph (d) to read as follows:

### § 63.7842  What records must I keep?

* * * * *

(d) You must keep the records required in §§ 63.7823, 63.7833, and 63.7834 to show continuous compliance with each emission limitation and operation and maintenance requirement that applies to you. This includes a record of each large and small bell repair and replacement, a record of the date on which the large bell opacity has exceeded 20 percent, and the most current time period or throughput over which no opacity was observed from the small bell. The requirements of this paragraph for records for large and small bells are stayed from April 2, 2025 to July 1, 2025.

* * * * *

### Table 1 to Subpart FFFFF of Part 63 [Amended]

■ 9. Amend table 1 to subpart FFFFF of part 63 by staying item 16 from April 2, 2025, to July 1, 2025.

### Table 2 to Subpart FFFFF of Part 63 [Amended]

■ 10. Amend table 2 to subpart FFFFF of part 63 by staying item 16 from April 2, 2025, to July 1, 2025.

### Table 3 to Subpart FFFFF of Part 63 [Amended]

■ 11. Amend table 3 to subpart FFFFF of part 63 by staying item 16 from April 2, 2025, to July 1, 2025.

[FR Doc. 2025–05339 Filed 3–28–25; 8:45 am]

**BILLING CODE 6560–50–P**

## DEPARTMENT OF COMMERCE

### National Oceanic and Atmospheric Administration

### 50 CFR Part 622

[Docket No. 231101–0256; RTID 0648–XE647 and Docket No. 230914–0219; RTID 0648–XE741]

### 2025 Recreational Season Announcement and Closure for Golden Tilefish in the South Atlantic; 2025 Recreational Accountability Measure and Closure for Gag in the South Atlantic; Correction

**AGENCY:** National Marine Fisheries Service (NMFS), National Oceanic and Atmospheric Administration (NOAA), Commerce.

**ACTION:** Temporary rule; correction.

**SUMMARY:** This document contains corrections to two temporary rules published in the **Federal Register** on March 20, 2025, with an effective date span of March 21 through December 31, 2025, and March 24, 2025, with an effective date span of June 26 through December 31, 2025. Both of these temporary rules announced the season closure dates for the recreational harvest of golden tilefish and gag, respectively, in the U.S. exclusive economic zone (EEZ) of the South Atlantic. This document corrects the subject headings of those temporary rules.

**DATES:** This correction is effective on March 31, 2025.

**FOR FURTHER INFORMATION CONTACT:** Mary Vara, NMFS Southeast Regional Office, telephone: 727–824–5305, email: *mary.vara@noaa.gov.*

**SUPPLEMENTARY INFORMATION:** NMFS is correcting the subject headings of the temporary rules that published in the **Federal Register** on March 20, 2025 (90 FR 13099), and March 24, 2025 (90 FR 13425).

### Corrections

In **Federal Register** documents 2025–04788, that published on March 20, 2025, at 90 FR 13099, and 2025–04903, that published March 24, 2025, at 90 FR 13425, the following corrections are made:

1. In the **Federal Register** issue of March 20, 2025, on page 13099, at the top of the second column, correct the subject heading of the temporary final rule to read as: ''2025 Recreational Season Announcement and Closure for Golden Tilefish in the South Atlantic''.

2. In the **Federal Register** issue of March 24, 2025, on page 13425, in the middle of the second column, correct the subject heading of the temporary final rule to read as: ''2025 Recreational Accountability Measure and Closure for Gag in the South Atlantic''.

**Authority:** 16 U.S.C. 1801 *et seq.*

Dated: March 26, 2025.

**Karen H. Abrams,**

*Acting Director, Office of Sustainable Fisheries, National Marine Fisheries Service.*

[FR Doc. 2025–05501 Filed 3–27–25; 4:15 pm]

**BILLING CODE 3510–22–P**